# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

BARBARA VERDINE, )
)
    Plaintiff, )
)
v. ) Case No. CIV-16-152-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration, [1] )
)
    Defendant. )

## OPINION AND ORDER

    The claimant Barbara Verdine requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

    Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 28, 1977, and was thirty-seven years old at the time of the most recent administrative hearing (Tr. 224). She has a high school equivalent education, and has worked as a price marker, warehouse worker, and youth guidance specialist (Tr. 35, 45). The claimant alleges she has been unable to work since October 21, 2011, due to kidney problems, back problems, depression, rheumatoid arthritis, bipolar disorder, migraine headaches, and anxiety (Tr. 259).

## Procedural History

On November 21, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 220-33). Her applications were denied.[3] ALJ Jodi Levine held an administrative hearing, but recused herself prior to issuing a decision (Tr. 49). ALJ Kim Parrish held a second administrative hearing and determined that the claimant was not disabled in a written opinion dated April 24, 2015 (Tr. 17-25). The Appeals Council denied review, so

---

[3] The Commissioner denied the claimant disability insurance benefits on the basis that she did not have sufficient credits to qualify for such benefits (Tr. 99-101). The claimant does not appeal the Commissioner's decision to deny her disability insurance benefits.

the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the non-exertional limitations of working in relative isolation with limited contact with peers, supervisors, and the general public, and understanding, remembering, and carrying out only repetitive one and two-step tasks at a specific vocational preparation ("SVP") level no higher than two (Tr. 21). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a price marker and warehouse worker, and alternatively, because there was other work she could perform in the regional and national economies, *e. g.*, cleanup worker, hand packer, and floor waxer (Tr. 23-25).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of consultative examiner Dr. Shalom Palacio-Hollman. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant's major depressive disorder, bipolar disorder, and anxiety disorder were severe impairments, but that her esophagitis, recurrent urinary tract infections, stress incontinence, and headaches were non-severe (Tr. 19). The relevant medical evidence reveals that physician assistant Ronald Pauls diagnosed the claimant

with uncontrolled depression on November 30, 2010, and periodically treated her for depression thereafter (Tr. 329-30, 333, 530, 532). Physician assistant Gil Torres treated the claimant for bipolar disorder on an outpatient basis from January 2011 through September 2012 (Tr. 326, 418, 423, 498). Additionally, the claimant received inpatient mental health treatment on two occasions (Tr. 406-17, 665-714). She was admitted to St. Anthony Hospital from November 1, 2011, through November 7, 2011, for suicidal precautions and medication stabilization after reporting intense depression and suicidal ideation (Tr. 406-17). Dr. Lata Vad noted the claimant was anxious, nervous, and sleep deprived at admission (Tr. 410). At discharge, Dr. Vad diagnosed the claimant with major depression, recurrent, moderate; recommended that she follow up on an outpatient basis with a psychiatrist; and advised her to take her medications as prescribed (Tr. 407-08). The claimant was next admitted to St. Anthony Hospital from September 6, 2012, through September 25, 2012, due to increased depression and suicidal thoughts (Tr. 665-714). Dr. Haisam Al-Khouri conducted a mental status exam at admission and noted the claimant was paranoid, and had delusional thinking, a flat affect, a depressed mood, intact memory, and average intelligence (Tr. 669). He also noted the claimant's attention and concentration were decreased, her insight and judgment were poor, and her reality testings were impaired, but that she had no hallucinations, thought blocking, flight of ideas, tangentiality, circumstantiality, or loose associations (Tr. 669). The claimant's course of treatment included suicide precaution, medication management, psychotherapy, electroconvulsive therapy, and milieu activities (Tr. 667-84). At discharge, Dr. Al-Khouri diagnosed the claimant with bipolar disorder, most recent episode mixed with

psychotic features, and anxiety disorder not otherwise specified, and recommended that she follow up with Mr. Torres within two weeks (Tr. 667).

Shalom Palacio-Hollman, Psy.D., conducted a psychological consultative examination on June 20, 2012 (Tr. 466-70). She observed that the claimant was restless during the interview, appeared sad, and had a flat affect (Tr. 467). Dr. Palacio-Hollman indicated that the claimant's thought process was logical and goal directed; she was alert and oriented to person, place, time, and situation; her intelligence and fund of information were average; she demonstrated some ability for abstract thinking; her attention, memory, and concentration were intact; her judgment was fair; and her insight, and impulse control were poor (Tr. 467-69). Dr. Palacio-Hollman opined that the claimant could understand and remember simple instructions, but would have difficulty carrying them out because of low motivation and physical complaints; would have difficulty with pace and flexibility in social and occupational settings; and may have some difficulty getting along with the public, coworkers, and supervisors (Tr. 469). Dr. Palacio-Hollman further indicated that the claimant's depression would improve if her physical condition improved, but that some depressive symptoms may persist since the claimant reported depressive symptoms since childhood (Tr. 469). She believed the claimant's prognosis was fair with continued counseling and medication (Tr. 469). As to the claimant's ability to work, Dr. Palacio-Hollman opined that she could not perform in a work setting on a consistent basis at the time of the exam, but could manage her own money if awarded benefits (Tr. 469).

State reviewing physician Dr. Zabra Yousef completed a Mental Residual Functional Capacity Assessment on August 1, 2012, and found the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal work day and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goal or make plans independently of others (Tr. 494-97). She concluded that the claimant could perform simple unskilled work (Tr. 496).

At the August 2014 administrative hearing, the claimant stated she experiences panic attacks that can be triggered by anything stressful; has suicidal thoughts "every day, a couple of times a day"; and constantly has racing thoughts, which are worsening (Tr. 78-80). At the January 2015 administrative hearing, the claimant testified that she experiences suicidal thoughts "all the time," and has acted on those thoughts in the past, but could not recall when she last did so (Tr. 41). She further testified that her medications improve her suicidal thoughts, but do not fully resolve them (Tr. 41).

In his written opinion, the ALJ summarized the claimant's hearing testimony, her function reports, and some the medical records. In discussing the opinion evidence, the ALJ gave some weight to Dr. Palacio-Hollman's opinions that the claimant could understand and remember simple instructions, had some problems with pace and flexibility in social and occupational settings, and had problems getting along with others at times because such opinions were consistent with the medical record and the claimant's reported daily activities (Tr. 23). The ALJ gave little weight to Dr. Palacio-

Hollman's opinion that the claimant was unable to perform in a work setting on a consistent basis because such opinion was based on the claimant's subjective statements and was not evidence of the claimant's functional abilities over time (Tr. 23). The ALJ then gave some weight to the state agency physician's opinions, but concluded that the claimant was more limited in her social functioning (Tr. 23).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). While the Court notes that the consideration given to the duration of the relationship between the claimant and Dr. Palacio-Hollman was appropriate, the ALJ's other reason for rejecting her opinion was not legally sound. The ALJ's finding that the

opinion was not based on objective medical evidence fails to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart,* 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."),*citing Robinson,* 366 F.3d at 1083, *citing* 20 C.F.R. subpt. P, app. 1 § 12.00(B). Additionally, the ALJ adopted Dr. Palacio-Hollman's findings regarding the claimant's ability to understand and remember simple instructions, but entirely ignored her opinion as to the claimant's limited ability to carry out these instructions (Tr. 23). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Palacio-Hollman's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of her findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to

adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 15th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**